MARK MELCHERS, Plaintiff-Appellant, v. TOTAL ELECTRIC CONSTRUC-
TION *et al.*, Defendants-Appellees (Chicago Union Station Company,
Third-Party Plaintiff-Appellant; Riverside Construction Company, Third-
Party Defendant-Appellee).

First District (6th Division)    No. 1—97—1368

Opinion filed December 23, 1999.

James T. Newman, of Cooney & Conway, of Chicago, for appellant Mark Melchers.

Lord, Bissell & Brook, of Chicago (Richard F. Johnson, Diane I. Jennings, and Leslie J. Rosen, of counsel), for appellant Chicago Union Station Company.

David H. Levitt, Joshua G. Vincent, and Karen E. Tinglin, all of Hinshaw & Culbertson, of Chicago, for appellees Total Electric Construction *et al.*

Cremer, Kopon, Shaughnessy & Spina, of Chicago (William J. Cremer and Paul P. Pobereyko, of counsel), for appellee Riverside Construction Company.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Mark Melchers, instituted this action against defendant Chicago Union Station Company (Union Station) and numerous other defendants, seeking recovery for personal injuries sustained while he was working in a trench on a construction site. Plaintiff's complaint asserted claims under common-law negligence and the Illinois Structural Work Act (740 ILCS 150/1 *et seq*. (West 1994) (repealed by Pub. Act 89—2, eff. February 14, 1995)) (the Act). Union Station filed a third-party action for contribution alleging negligence on the part of Riverside Construction Company (Riverside). Riverside moved for summary judgment, asserting that it had no duty under its subcontract to protect the plaintiff from the injuries sustained. The trial court agreed and entered summary judgment in favor of Riverside, and Union Station has appealed.[1]

The facts, briefly summarized, indicate that plaintiff was injured on October 1, 1992, while working as an electrician on the construction of the new post office building in Chicago, Illinois. The United States government had retained Hyman/Power, a joint venture, as the general contractor on the project. Hyman/Power subcontracted with Union Station to perform certain portions of the work, including relocation of railroad track switching equipment. Union Station then entered into a sub-subcontract with Commercial/Total, plaintiff's employer, to install conduit and wire for a new switch interlocking system. Commercial/Total entered into an oral sub-sub-subcontract with Riverside Construction Company (Riverside) to perform the necessary excavation for this aspect of the project.

In order to install the conduit and wire for the new switch interlocking system, it was necessary to excavate the area beneath the existing railroad tracks. After the railroad ties had been removed, employees for Riverside dug a trench using a backhoe, and the dirt and rock were loaded into a Bobcat bucket. Thereafter, electricians employed by Commercial/Total worked in the trench and excavated the area beneath the tracks, in preparation for the installation of high voltage bank pipes. These workers used shovels and picks to dig below the tracks and threw the dirt and rock into wheelbarrows supported by wood planks laid on top of the rails. These planks were laid on the grade above the trench and were above the heads of those workers

---

[1]The instant appeal had been stayed pending plaintiff's appeal of the circuit court's entry of summary judgment against him and in favor of all defendants in the underlying action. This court reversed the summary judgment against plaintiff in a Rule 23 order filed December 31, 1998, and the stay of the instant appeal was lifted.

who were digging inside the trench. The workers in the trench who filled the wheelbarrows could not see into the wheelbarrows. When a wheelbarrow was full, a laborer or foreman moved it to an area where the contents were dumped. The workers in the trench continued excavating under the tracks while the wheelbarrows were moved.

Plaintiff was employed as an electrician, and his duties required that he work in the trench, excavating the area beneath the tracks. On the night of the accident, Mark O'Hara, the plaintiff's foreman, lost control of a wheelbarrow while he was attempting to move it. The wheelbarrow had been loaded unevenly and held wet clay on one side. Plaintiff was injured when he was struck by the wheelbarrow and its contents when they fell from the plank support above the trench in which he was working. Neither O'Hara nor the men filling the wheelbarrow could see that the load was unbalanced.

Union Station's third-party complaint alleged that Riverside had acted negligently in the following ways:

> (1) failed to make a reasonable inspection of the structure, premises, and the work;
>
> (2) failed to provide plaintiff with a safe place in which to work;
>
> (3) failed to warn plaintiff of the dangerous conditions; and
>
> (4) failed to properly supervise the work.

Riverside moved for summary judgment, arguing that its oral contract with Commercial/Total imposed no obligation to supervise the employees of other subcontractors, and, therefore, it had no duty to protect plaintiff from injuries occasioned by the actions of other Commercial/ Total employees. The trial court agreed, granting Riverside summary judgment, and Union Station has appealed.

■ Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt. *In re Estate of Hoover*, 155 Ill. 2d 402, 410, 615 N.E.2d 736 (1993); *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70, 620 N.E.2d 375 (1993). In considering whether summary judgment is appropriate, the court must construe the pleadings, depositions, admissions, and affidavits most strictly against the moving party and liberally in favor of the opponent of the motion. *In re Estate of Hoover*, 155 Ill. 2d at 410-11; *Colvin*, 156 Ill. 2d at 169-70; *Kolakowski v. Voris*, 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1980). Inferences that may reasonably be drawn from the evidence are to be resolved in favor of the party responding to the motion. *Kramer v. Weedhopper of Utah, Inc.*, 141 Ill. App. 3d 217, 221, 490 N.E.2d 104

(1986). Because the propriety of an order granting summary judgment involves a question of law, a court of review considers the matter *de novo*. *In re Estate of Hoover*, 155 Ill. 2d at 411.

The sole issue presented on appeal is whether the trial court erred in finding, as a matter of law, that Riverside could not be held liable for plaintiff's injuries because it owed no duty to the plaintiff.

■ Initially, we note that Union Station's third-party complaint for contribution was grounded in negligence. In order to prevail on a negligence claim, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990). When deciding whether to impose a duty, Illinois courts consider (1) the foreseeability of the plaintiff's injury, (2) the likelihood of the occurrence, (3) the magnitude of the burden of guarding against it, and (4) the consequences of placing that burden on the defendant. *Doe v. McKay*, 183 Ill. 2d 272, 278, 700 N.E.2d 1018 (1998). In a negligence action, the determination of whether a duty exists is an issue of law and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47, 566 N.E.2d 1365 (1991).

■ Riverside correctly asserts that when an allegation of negligence is based upon a contractual obligation, the scope of the duty is determined by the terms of the contract. *Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 480-81, 475 N.E.2d 822 (1985). Because Riverside's oral contract with Commercial/Total imposed no obligation to supervise the employees of other contractors, it cannot be found liable in negligence for the failure to supervise the work of O'Hara. Therefore, the trial court correctly determined that Riverside was entitled to summary judgment on this allegation of negligence.

We note, however, that the remaining claims of negligence in Union Station's third-party complaint are not predicated upon any contractual obligation. Rather, they are founded upon the common-law duty of care generally imposed upon all contractors and subcontractors, which is entirely independent of Riverside's obligations under the oral contract with Commercial/Total. Union Station argues that, despite the fact that Riverside was not contractually bound to supervise the employees of other subcontractors, it had a duty to perform its work with reasonable care so as to protect the plaintiff from injury. We agree.

■ It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and that

such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 86, 199 N.E.2d 769 (1964), citing *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 622, 126 N.E.2d 836 (1955); *Wintersteen v. National Cooperage & Woodenware Co.*, 361 Ill. 95, 103, 197 N.E. 578 (1935); Restatement of Torts § 311(2) (1934).

■ The Illinois Supreme Court has held that "[o]ne engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him." *Ziraldo v. W.J. Lynch Co.*, 365 Ill. 197, 201, 6 N.E.2d 125 (1936); see also *Leatherman v. Schueler Brothers, Inc.*, 40 Ill. App. 2d 56, 62, 189 N.E.2d 10 (1963); *Zebell v. Saufnauer*, 38 Ill. App. 2d 289, 293-94, 187 N.E.2d 320 (1962). Thus, a contractor whose servants are engaged upon work about which the servants of another contractor are engaged owes the duty of ordinary care in performing his work in such a way as not negligently to injure the servants of the other. *Zebell*, 38 Ill. App. 2d at 297 (Bryant, P.J., dissenting), citing *Ziraldo*, 365 Ill. at 201; *Markus v. Lake County Ready-Mix Co.*, 6 Ill. App. 2d 420, 427, 128 N.E.2d 370 (1955); *Fetzer v. Noel Construction Co.*, 175 Ill. App. 401, 403 (1912); *Variety Manufacturing Co. v. Landaker*, 129 Ill. App. 630, 633 (1906).

■ The annotation appearing at 55 A.L.R.4th 725 (Annot., *Entry and Liability of Subcontractor to Employee of Another Contractor Using Equipment or Apparatus of Former*, 55 A.L.R. 4th 725 (1987 & 1999 Supp.)) details the duty and liability of a subcontractor to an employee of another contractor using the equipment or apparatus of the former. This annotation points out that the subcontractor whose equipment was in use at the time of the injury may be held liable if it can be shown that the subcontractor, in the exercise of reasonable care, might reasonably have anticipated its use by the employee or employees of other contractors or subcontractors on the job. See for example *De Luca v. Fehlhaber Corp.*, 38 Misc. 2d 184, 237 N.Y.S.2d 852 (1963); see generally 55 A.L.R.4th 756-57, § 13(a) (1987 & 1999 Supp.). In addition, several courts have specifically recognized the construction-industry custom of reciprocal borrowing of equipment among contractors on a job. See *Schaffer v. Veach*, 61 Ill. App. 2d 168, 173, 209 N.E.2d 373 (1965); *Fetterman v. Production Steel Co.*, 4 Ill. App. 2d 403, 410, 124 N.E.2d 637 (1954); *Holliday v. Miles, Inc.*, 266 Cal. App. 2d 396, 72 Cal. Rptr. 96 (1968); 55 A.L.R.4th 757, § 15 (1987 & 1999 Supp.). Where the owner of equipment or other apparatus left at the site knows of this custom, it has a duty to protect the employees of another contractor who might use that equipment or apparatus. See *Holliday*, 266 Cal. App. 2d 396, 72 Cal. Rptr. 96; 55 A.L.R.4th 757, § 15 (1987 & 1999 Supp.).

In determining whether to impose a duty in such cases, the critical question is whether it was reasonably foreseeable that the employees of other contractors or subcontractors on the job would use the apparatus or equipment placed on the site by the defendant. See *Nelson*, 31 Ill. 2d at 86; *Zebell*, 38 Ill. App. 2d at 294; *Leatherman*, 40 Ill. App. 2d at 61-62.

■ In the instant case, the record indicates that Riverside employees dug the trenches for the relocation of the switching equipment and hauled dirt from the excavation area. The record also contains evidence that Riverside supplied and removed the wooden planking for the trench boxes and was involved in placing the planks on which the wheelbarrows were moved. Riverside owned and used the backhoe and Bobcat to do the primary excavation on the project. Riverside also owned some of the wheelbarrows used on the project and was involved in emptying them when necessary. There is also evidence in the record that Riverside set up the wheelbarrow used by plaintiff to complete the excavation.

It was certainly foreseeable that Commercial/Total's employees would use the wooden planks and wheelbarrow during their excavation of the area beneath the railroad tracks. In fact, the employees of Riverside actually surrendered the excavation site and the equipment to Commercial/Total's employees when it became necessary to dig under and around piping material in the ground. Based upon this evidence, it is clear that Riverside had the opportunity and duty to foresee the presence of the plaintiff and the danger to him. In addition, the likelihood of the occurrence was great where there was a risk the wheelbarrow would be loaded unevenly and where the electricians remained in the trench while the full wheelbarrows were moved across the planks above their heads. The magnitude of the burden of guarding against the injury and the consequences of placing the burden upon the defendant were minimal. Riverside and the subcontractors involved in the excavation could easily have implemented a safety procedure requiring that only skilled workers move the wheelbarrows or requiring that wheelbarrows not be moved while workers remained in the trench.

We hold, therefore, that Riverside had a duty to exercise reasonable care to protect plaintiff from injury caused by its equipment or apparatus. Riverside cannot avoid its common-law duty by claiming that it was not contractually bound to supervise the employees of other contractors or subcontractors. Although there is no allegation that the wheelbarrow was defective, a jury might conclude that use of the wheelbarrow in the manner described constituted a breach of this duty and would support a finding of negligence on the part of

Riverside. If a jury determines that Riverside acted negligently in the manner asserted by Union Station, then Riverside would be liable for its conduct, even though the alleged concurrent negligence of O'Hara, who moved the wheelbarrow, might have contributed to plaintiff's injuries.[2]

Because we find that Riverside's right to judgment was not clear and free from doubt as a matter of law, we hold that the trial court erred in entering summary judgment in favor of Riverside.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.

___

[2]In our previous Rule 23 order, reversing summary judgment against the plaintiff, we characterized the wheelbarrow as "an inherently unstable instrumentality." This order did not grant summary judgment in favor of the plaintiff and did not hold, as a matter of law, that the use of the wheelbarrow, in and of itself, was sufficient to establish negligence or a finding of liability. Rather, we held that evidence of the use of the wheelbarrow, which was unevenly loaded and then moved across wooden planking positioned above the trench in which the plaintiff was digging, was sufficient to create a genuine issue of material fact as to whether the defendants had breached their duty of care to the plaintiff.